# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHAEL KURT LARSEN,

      Plaintiff,

v.                             CASE NO. 14-CV-12101
                                 HON. DENISE PAGE HOOD

PINE RIDGE OPERATOR, LLC
d/b/a PINE RIDGE OF PLUMBROOK,
and SPECTRUM RETIREMENT
COMMUNITY OF MICHIGAN, LLC
d/b/a PINE RIDGE OF PLUMBROOK,

      Defendants.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY, DENYING MOTION TO STRIKE REPLY BRIEF AND CLOSING ACTION

## I.      BACKGROUND/FACTS

On May 27, 2014, Plaintiff Michael Kurt Larsen ("Larsen") filed a Complaint against Defendants Pine Ridge Operator, LLC and Spectrum Retirement Community of Michigan, LLC, doing business as Pine Ridge of Plumbrook. An Amended Complaint was filed on May 28, 2014 alleging that Defendants were negligent in housing and taking care of Larsen's father, Kurt Larsen, at their senior living facility. Decedent Larsen was found dead, lying in the creek behind the facility on November 15, 2013, as a result of drowning with Dementia as a contributing factor. (Am.

Comp., ¶¶ 6-7) Larsen seeks damages under Michigan's wrongful death statute, M.C.L. § 600.2922. (Am. Comp., ¶ 12)

## II.   ANALYSIS

### A.   Arbitration

#### 1.   Provision and the Law

Defendants filed a Motion to Compel Arbitration on August 14, 2014 asserting that the agreement signed by Larsen, with a power of attorney ("POA"), provides for arbitration in any dispute. On April 19, 2013, Larsen's parents, Kurt and Tove Larsen, entered into a Residency Agreement for Independent Senior Living with Pine Ridge Operator, LLC. Larsen signed the Agreements, representing he held a POA on behalf of his parents. (Doc. No. 17, Ex. A) The Agreements contain an arbitration clause which states:

> **16. ARBITRATION**
> By signing this Agreement, both of us agree that all claims, disputes, demands, or controversies arising out of or in any way relating to this Agreement or its breach or related to any act or omission committed by us or any of our employees in connection with any services that we may provide you while a resident at the Community will be submitted to binding arbitration in the state where the Community is located. Such Arbitration will be conducted in accordance with the rules of the American Arbitration Association, applying the laws of the state where the Community is located. Your agreement to arbitrate disputes arising under this Agreement or disputes arising out of or related to any service that we may provide while a resident at the Community applies to any claim, dispute, demand or controversy, whether against the Community, its owners, operators, managers, employees, agents, officers, directors or

2

affiliates or subsidiaries, and binds you, your legal representative, your responsible person(s), your spouse, estate and your heirs.  Any award rendered by the arbitration shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction over the parties.  The costs of any Arbitration proceeding shall be shared equally by both of us.  All current damages arising out of such claims or controversies shall also be incorporated into the initial filing or amendment thereto.  The arbitrator(s) shall not award punitive or exemplary damages.

Either the Community or the Resident may bring a suit or action to enforce any part of this Agreement or vacate the Residence.  The prevailing party may collect from the losing party, in addition to costs and necessary disbursements, reasonable attorney's fees and costs, at trial and upon appeal, if allowed by the law.

(Doc. No. 17, Agreement, ¶ 16)  Larsen responds that the arbitration clause is unenforceable or should be voided.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 states:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . ., or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Section 1 of the FAA provides the sole exception to the enforceability of arbitration agreements, stating that Section 2 "shall [not] apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  *See* 9 U.S.C. § 1; *See, Circuit City Stores, Inc. v.*

3

*Adams*, 532 U.S. 105 (2001) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

The Sixth Circuit has reiterated the strong presumption in favor of arbitration on more than one occasion.  *See, e.g., Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2001) (stating that the FAA promotes a "strong federal policy in favor of arbitration" and "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with speedier and less costly alternative litigation");  *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 235 (6th Cir. 2000)("[T]here is 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'");  *Willis v. Dean Witter Reynolds Inc.*, 948 F.2d 305, 311 (6th Cir. 1991) ("Congress passed the FAA to ensure that courts honor the contractual agreement of parties who choose to resolve their disputes by arbitration.").  The Sixth Circuit expressly stated that "[c]ourts are to examine the language of the [Arbitration Agreement] in light of the strong federal policy in favor of arbitration."  *Stout*, 228 F.3d at 714.  Further, "any ambiguities in the [Arbitration Agreement] or doubts as to the parties' intentions should be resolved in favor of arbitration."  *Id*.

When considering a motion to compel arbitration under the FAA, courts engage in a four-step analysis.  The first is "to determine whether the parties agreed to

arbitrate." *Id.* If so, then the second step is to consider the scope of the agreement. *Id.* Third, "if federal statutory claims are asserted, [the Court] must consider whether Congress intended those claims to be nonarbitrable." *Id.* Finally, "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Id.*

## 2.   Applying the Factors

Reviewing the Agreement at issue, the Court finds that as to the first factor, the parties agreed to the arbitration provision.   Larsen's signature appears on the Agreement.

As to the second factor, the scope of the Agreement, the Court finds that the parties agreed expressly that "*all claims*, disputes, demands, or controversies *arising out* of or in any way relating to this Agreement or its breach or *related to any act or omission committed by us or any of our employees in connection with any services that we may provide you while a resident at the Community* will be submitted to binding arbitration in the state where the Community is located." (Doc. No. 17, Agreement, ¶ 16)(emphasis added). The parties agreed to arbitrate "all claims" arising out of the Agreement or any act or omission by the employees in connection with any services provided by Pine Ridge.

5

The third and fourth factors do not apply since there are no federal claims at issue and negligence by Pine Ridge is the only claim alleged in the Amended Complaint.  Larsen's specific arguments are addressed below.

### 3.    Knowing Waiver of Jury Trial

First,  Larsen argues he did not knowingly waive the right to a jury trial in that he merely glanced at the Agreement before signing the Agreement, citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005).  In *Walker*, a collective-bargaining case, the employees lacked high school education and their employer appeared to have provided them false information.  These factors are not present in this case.  Larsen admits he has a college degree and is able to read and understand English.  He visited the complex in early April, but did not finalize the agreement until April 19, 2013, which gave him sufficient time to review the Agreement.  Although Larsen claims he did not review or was given a copy of the Agreement until the day he signed it, Larsen has not alleged that he had no option but to sign the Agreement that day.  If Larsen required more time to review the Agreement, he should have raised the issue at the time of signing.  The Sixth Circuit has "flatly rejected" the argument that an arbitration clause "must contain a provision expressly waiving the employee's right to a jury trial" because the obvious consequence of an agreement to arbitrate is straightforward.  *Cooper v. MRM*

6

*Investment Co.*, 367 F.3d 493, 506 & n. 4 (6th Cir. 2004).  An unequivocal waiver of

the right to a jury trial is not required outside the collective bargaining context.  *Id.*

The instant case is not a collective bargaining case.

### 4.    **Ambiguous**

Larsen also argues that the arbitration clause is ambiguous in light of the second

paragraph in the provision which states:

> Either the Community or the Resident may bring a suit or action to
> enforce any part of this Agreement or vacate the Residence.  The
> prevailing party may collect from the losing party, in addition to costs
> and necessary disbursements, reasonable attorney's fees and costs, at
> trial and upon appeal, if allowed by the law.

(Doc. No. 17, Agreement, ¶ 16)

At the hearing, Defendants' counsel was unable to explain this provision and

how the provision applies in light of the first paragraph of the arbitration clause.

Questions concerning the interpretation and construction of arbitration agreements are

determined by reference to federal substantive law.  *Lozada v. Dale Baker

Oldsmobile, Inc.*, 91 F.Supp. 2d 1087, 1100 (W.D. Mich. 2000).  Ambiguous

contractual language is construed against the drafter of the contract.  *Albert M. Higley

Co. v. N/S Corp.*, 445 F.3d 861, 865 (6th Cir. 2006).  However, a contract is only

ambiguous if it can be reasonably interpreted to support two different positions.  *Id.*

This provision of the Agreement allows either party to bring suit to "enforce"

any part of the Agreement or "vacate" the Residence.  Larsen's Complaint does not seek to "enforce" any part of the Agreement, nor to "vacate" the Residence.  Larsen instead seeks damages from the alleged "claim" of negligence by Defendants "arising out of" or "related to any act or omission committed by" Defendants in the care of Larsen's father.  The first paragraph of the arbitration clause specifically provides that both parties agree that all "*claims, disputes, demands, or controversies arising out of or in any way relating to this Agreement or its breach or related to any act or omission committed by us or any of our employees in connection with any services that we may provide you while a resident at the Community* will be submitted to binding arbitration in the state where the Community is located."  (Doc. No. 17, Agreement, ¶ 16)(emphasis added).  Larsen's argument that the second paragraph of the arbitration clause renders the first paragraph ambiguous is not applicable to his claims against Defendants in this action since Larsen does not seek to "enforce" any provision of the Agreement nor does he seek to "vacate" the premises.  Larsen's interpretation of the second paragraph of the arbitration clause so as to render moot the first paragraph is not a reasonable interpretation of the contract provision.

### 5.    Consideration

Larsen claims that there was no adequate consideration for the agreement to arbitrate in that he had no power to object and Pine Ridge retained the right to modify

the rules of the arbitration.  The Sixth Circuit has rejected this argument noting that lack of consideration and lack of bargaining power claims are without merit because both parties in the agreement have the same duty to arbitrate; Defendants in this case also waived their right to a jury trial.  *Id.* at 505 (citing *Wilks v. Pep Boys*, 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003); *Kinzel v. Bank of America*, 2013 WL 4679938 at *5 (N.D. Ohio 2013)).

### 6.    Public Policy Reasons

Larsen asserts that the arbitration clause is void as a matter of public policy. The Supreme Court has held that an arbitration agreement is not void for public policy reasons.  *Marmet Health Care Center v. Brown,* 132 S.Ct. 1201, 1203-04 (2012) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.").  It is well established that there exists "an emphatic federal policy in favor of arbitral dispute resolution."  *KPMG LLP v. Cocchi*, 132 S.Ct. 23, 25 (2011).

### 7.    Fraud in the Inducement

Larsen's states that there was fraud in the inducement because Pine Ridge "tricked" him into signing the clause, misrepresenting the nature of the document being signed.  Larsen claims that Pine Ridge did not explain what rights he was giving up and that the arbitration clause was "just another page" of the admission forms.  The

Sixth Circuit has noted that one pleading that an arbitration clause was part of a broader fraudulent scheme, without more, is no longer sufficient to overcome the strong federal policy in favor of arbitration. *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 491 (6th Cir. 2001). In this case, the Complaint does not allege or plead that there was a broader fraudulent scheme when Larsen was "induced" to signing the Agreement. Since no aspect of Larsen's claim involves the arbitration agreement separately, only that Defendants were negligent in caring for his father, Larsen cannot claim as a defense that he was fraudulently induced to sign the arbitration agreement. *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). The Sixth Circuit has noted that "one who signs a contract is presumed to know its contents." *Id.* at 492 (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000)). Larsen does not dispute that he signed the Agreement and that he initialed the page containing the arbitration clause.

### 8.     Unconscionable/Bargaining Power

Larsen's final argument is that the arbitration clause is unconscionable and that he had no bargaining power in entering into the arbitration clause. The Sixth Circuit has held that because a party has an inferior bargaining power, this does not render a contract substantively unconscionable. *Cooper*, 367 F.3d at 504. Mere inequity in bargaining power is not a sufficient reason to hold that arbitration agreements are

never enforceable.  *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)).  Even if a plaintiff had far less bargaining power than a defendant, this does not detract from the bilaterality of the agreement to arbitrate because the defendant also had the same duty to arbitrate.  *Cooper*, 267 F.3d at 505.

### B.      Plaintiff's Motion to Strike Defendant's Reply Brief

Larsen seeks an order striking Defendant's Reply Brief since it was filed untimely, beyond the page limit and raised new arguments, all in violation of the Local Rule.  Defendants respond that because Larsen also violated the Local Rule for failing to confer with the defense before filing this motion, Larsen cannot invoke violation of the Local Rule as a basis for striking Defendants' late reply brief.

The trial court has the discretion to govern motion practice and filing of briefs and that barring extreme circumstances the court has the discretion to allow submissions even where there is a failure to comply with the requirements of a local rule.  *Salehpour v. Univ. of Tenn.,* 159 F.3d 199, 205 (6th Cir. 1998).  E.D. Mich. LR 7.1 provides that reply briefs may not exceed 7 pages and a reply brief to a dispositive motion must be filed within 14 days after service.  E.D. Mich. LR 7.1(d)(3) and 7.1(e)(1)(C).  The response was filed on September 4, 2014 and the reply brief was filed on October 9, 2014, more than the 14 days required by the Local Rule and was more than 7 pages.

11

The Court finds, as the defense admits, the reply brief was filed untimely under the Local Rules. The Court's review of the reply brief shows that it addressed the arguments raised by Larsen in his response brief, which is proper to do so in reply briefs. Defendants did not submit any new evidence in their reply brief. Larsen is not prejudiced by the filing of the late reply brief since he was able to argue at the hearing any issues raised in the reply brief. Although the collegial way to handle this matter was for the defense to first contact plaintiff's counsel to file a brief late or to file a motion to file a late brief, and for plaintiff's counsel to contact the defense regarding an intent to file a motion to strike the reply brief, the Court finds no extreme circumstances exist in this matter and will not strike the reply brief. Even without the benefit of the reply brief, the Court's ruling remains as noted above.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Compel Arbitration and to Stay (**Doc. No. 17**) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Reply Brief (**Doc. No. 21**) is DENIED.

IT IS FURTHER ORDERED that this action is STAYED until conclusion of any arbitration proceedings and this action is CLOSED on the Court's docket for

statistical purposes.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for the purpose of confirming, vacating or correcting any arbitration award. Any party may move to do so at the conclusion of the arbitration proceedings.


s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: November 26, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 26, 2014, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager